UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-348 (JNE)

UNITED STATES OF AMERICA,

      Plaintiff,

v().

GALE ALLEN RACHUY,

      Defendant.

**GOVERNMENT'S SENTENCING MEMORANDUM**

## I. INTRODUCTION

"By almost all accounts Gale Rachuy is a career criminal. Rachuy accumulated, over 40 years, nearly 30 convictions, mostly for fraud. He is a man who has spent many years gaining people's trust only to turn around and betray them." *United States v. Rachuy*, 743 F.3d 205, 207 (7th Cir. 2014). As the Seventh Circuit Court of Appeals recognized, Rachuy is a serial fraudster. He has a long-standing pattern of engaging in theft, swindle, forgery, and fraud. Rachuy is now before this Court for sentencing having pleaded guilty to Count 1 of the Indictment charging him with wire fraud. Rachuy's most recent fraud scheme is particularly egregious. He held himself out as a licensed attorney—despite never having graduated from law school or been admitted to any state bar—and defrauded a 78-year-old man in Arkansas into believing he was retaining the legal services of Rachuy's purported law firm, Midwest Legal Service. Rachuy also falsely represented that two former federal and state court judges were employed by his firm and would be working on the case. Rachuy ultimately obtained $2,500 from the fraud scheme, which would have been more had his scam not been discovered. In light

of his long history of unrelenting fraudulent conduct, the government respectfully recommends that the Court impose a custodial term within the Guidelines of 15-21 months, to be followed by three years of supervised release, and $2,500 in restitution.

## II.   BACKGROUND

### A.   Offense Conduct

In approximately 2013, Rachuy met the victim of his crime—referred to as Victim A in the Indictment—while the two were in federal prison together at FCI Oakdale. (PSR ¶ 12.) According to Victim A, Rachuy told everyone in prison that he was a Harvard-educated lawyer. (*Id.*) Victim A filed a 2255 motion to vacate his conviction, and his motion was denied. (PSR ¶ 13.) After his motion was denied, Victim A sought to put a legal team together to appeal the decision, and thought of Rachuy, whom he located on an online search. (*Id.*) According to his Facebook page, Rachuy claimed to operate Midwest Legal Service in Duluth, Minnesota. (*Id.*) Victim A contacted Rachuy, who told Victim A that Rachuy's record had been expunged and that he had been reinstated as a licensed attorney. (*Id.*) Rachuy also told Victim A that he employed former federal and state court judges at his law firm. (*Id.*)

In approximately March 2022, Victim A and Rachuy began discussing Victim A's 2255 proceeding. (*Id*). Rachuy told Victim A he would be able to get the former federal and state court judges to work on his case. (*Id.*). To retain the judges, Rachuy informed Victim A that he would have to pay a retainer fee of $10,000, and that the first retainer payment of $2,500 would be due on March 15, 2022. (*Id.*) Rachuy and Victim A each

signed a retainer agreement, which specified that both judges would be assisting in Victim A's legal representation. (*Id.*)

On March 15, 2022, Victim A paid the $2,500 retainer fee via wire from his credit union account in Fayetteville, Arkansas, to Rachuy's Wells Fargo bank account in Minneapolis, Minnesota. (*Id.*) Victim A was scheduled to wire another $2,500 installment to Rachuy on April 1, 2022, but he became suspicious of Rachuy after not seeing any drafts or filings in his case. (*Id.*) After Victim A realized that Rachuy was fraudulently representing these services, he ceased making future payments. (*Id.* ¶ 14.) Despite assuring Victim A that the funds would be returned, Rachuy never returned the funds. (*Id.*)

Victim A and agents subsequently contacted both of the former federal and state court judges regarding their purported representation of Victim A. (*Id.* ¶ 15.) Those communications confirmed that Rachuy's representations were false and that neither were retained to represent Victim A nor were they aware of Rachuy's scheme. (*Id.*)

### B. PSR and Applicable Guidelines Calculations

On May 10, 2023, Rachuy pleaded guilty to Count 1 of the Indictment charging him with wire fraud, in violation of Title 18, United States Code, Section 1343. (PSR ¶ 2; Plea Agreement ¶ 1.) In the Plea Agreement, the parties agreed that the base offense level was 7 for wire fraud. (Plea Agreement ¶ 5(a).) The government maintained an adjustment of +2 for loss greater than $6,500 but less than $15,000, whereas Rachuy did not agree with the government regarding intended loss. (Plea Agreement ¶ 5(b).) If the 2-level loss adjustment applies, the adjusted offense level is 9, reduced to a total

3

offense level of 7 when accounting for acceptance of responsibility. (Plea Agreement ¶ 5(d).) A total offense level of 7 and a criminal history category of VI yields a Guidelines range of 15 to 21 months in prison. (Plea Agreement ¶ 5(f).) Probation is in agreement with that calculation. (PSR ¶ 140.)

The parties also agreed in the Plea Agreement that Rachuy would pay restitution, which is mandatory, in the amount of $2,500 to Victim A. (Plea Agreement ¶ 9.) Rachuy waived his appeal rights so long as the sentence he receives is not higher than the applicable Guidelines range. (*Id.* ¶ 11.) Rachuy also waived his rights under 28 U.S.C. § 2255, except with regard to a claim of ineffective assistance of counsel. (*Id.*)

## III.   DISCUSSION

Consistent with the parties' plea agreement, the United States respectfully requests that the Court sentence Rachuy to a Guidelines term of imprisonment followed by a 3-year term of supervised release. This sentence is appropriate based on consideration of the parties' agreement and the factors set forth in 18 U.S.C. § 3553(a). In particular, a Guidelines sentence, followed by a 3-year term of supervised release, is appropriate given the nature and seriousness of the offense and Rachuy's history and characteristics.

### A.   The Nature and Circumstances of the Offense

The nature of Rachuy's fraud scheme in this case is serious. Rachuy engaged in wholesale fraud in falsely representing his status as a licensed attorney and operator of a law firm. He further falsely represented that he employed two retired judges at his purported law firm. Rachuy drafted a detailed fraudulent retainer agreement noting

that Victim A would be represented by the former judges "on behalf of Midwest in these proceedings," and that Victim A would "bear the travel and lodging expenses" for the judges "in the event it is necessary to appear in person in Arkansas for hearings." To perpetuate the fraud, Rachuy sent Victim A numerous communications pretending to be the judges or otherwise communicate with Victim A on their purported behalf.

Rachuy's repeated lies, his complex and highly orchestrated deceit and deception, his abuse of trust with someone whom he had a personal relationship, and his use of the names of two judges to perpetuate his scheme calls for severe punishment. In committing his crime, Rachuy stole not only Victim A's money, but also his trust in the legal process. Rachuy then deepened his harm by involving two innocent and unaware retired judges in his scheme. Rachuy's crime is serious and he committed the offense knowingly and intentionally. There was real harm done to the victim in this case. His shocking behavior in committing this crime is among the most egregious fraudulent behavior and a significant term of incarceration is necessary to punish Rachuy's serious crime.

B.  **History and Characteristics of the Defendant, and Need for Deterrence**

This was not a one-off mistake or a crime borne of extreme need or desperation. Rather, as Probation details in its report, Rachuy has an astonishing criminal history, with more than 30 felony convictions over the past 50 years. (PSR ¶¶ 33-98.) Rachuy was most recently sentenced to prison by Western District of Wisconsin District Judge William Conley for violating his supervised release conditions in June 2019. In

sentencing Rachuy, the court stated, "the defendant is the epitome of a career offender" and that "[his crime is] just the latest in a string of fraudulent schemes spanning his entire adult life." *United States v. Rachuy*, No. 10-cr-141 (WMC), at *2 (W.D. Wis. June 7, 2019). The court stated that, "if federal law and guidelines recognize[d] [the] status [of] white-collar fraud, he could well be Exhibit A." *Id*. The court further stated that Rachuy "has repeatedly demonstrated that (1) he has no moral compass when it comes to victimizing others through fraud, (2) he has no compunction about doing so again, (3) prison sentences will not deter him from committing additional crimes, (4) it is a near certainty that he will commit additional frauds upon his release from custody . . . . The amount of money the defendant has cost the victims of his crimes is at this point incalculable. That is in addition to the amount of money government agencies have expended prosecuting, incarcerating and supervising him." *Id*. Finally, the court noted with remarkable foresight, "if history is prologue, then the defendant will almost certainly return to fraud as a way of making a living when he is released." *Id*. at *8. Indeed, upon his release, Rachuy reoffended and committed the present offense.

As Probation aptly notes in its report, Rachuy has a pattern of deceptive and repetitive conduct that is financially motivated. This is merely Rachuy's most recent fraud-related conviction, showing an unrepentant fraudster who poses a significant risk of re-offense without a serious punishment. Given Rachuy's persistent criminal conduct, a significant term of imprisonment is warranted both to deter Rachuy from continuing his pattern of deceptive and harmful conduct, but also to send a deterrent message to other would-be fraudsters.

### C. Just Punishment and Public Safety

A considerable term of incarceration is necessary to provide just punishment for Rachuy's crimes and protect the public. A Guidelines sentence accomplishes this end, while also acknowledging his acceptance of responsibility.

The audacity and severity of Rachuy's crimes underscores the need to protect the public from Rachuy's perpetual fraud and provide just punishment. Rachuy's criminal record and present offense indicate that he is a danger to the community and that he is not truly interested in or capable of treatment and rehabilitation. A Guidelines sentence is warranted in this case to send a clear message to individuals like Rachuy that these are serious crimes and should be treated as such.

### IV. CONCLUSION

For all these reasons, the government respectfully requests that the Court impose a Guidelines term of imprisonment, a 3-year term of supervised release, and $2,500 in restitution. Such a sentence fully comports with the United States Sentencing Guidelines and the factors of Title 18, United States Code, Section 3553(a).

Dated: November 29, 2023               Respectfully Submitted,

ANDREW M. LUGER
United States Attorney

*/s/ Chelsea A. Walcker*

BY: CHELSEA A. WALCKER
HARRY M. JACOBS
Assistant United States Attorneys